Law Offices of
**MATHENY SEARS LINKERT & JAIME, LLP**
MATTHEW C. JAIME, ESQ. (SBN 140340)
ROBERT W. SWEETIN, ESQ. (SBN 297130)
3638 American River Drive
Sacramento, California 95864
Telephone:    (916) 978-3434
Facsimile:    (916) 978-3430

**CURTIS, MALLET-PREVOST, COLT & MOSLE LLP**
JACQUES SEMMELMAN, ESQ.
MICHAEL MOSCATO, ESQ.
(*Pro Hac Vice admission pending*)
101 Park Avenue
New York, New York 10178-0061
Telephone:    (916) 978-3434
Facsimile:    (916) 978-3430

Attorneys for Plaintiff,
THE REPUBLIC OF KAZAKHSTAN

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE REPUBLIC OF KAZAKHSTAN,<br><br>                    Plaintiff,<br><br>    v.<br><br>DOES 1 to 100, INCLUSIVE,<br><br>                    Defendants. | Case No. 2:15-at-01287<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS**<br><br>**[Fed. R. Civ. P. 45]**<br><br>**Date:** February 11, 2016<br>**Time:** 10:00 a.m.<br>**Courtroom:** 25, 8th Floor<br>**Judge:** Hon. Troy L. Nunley<br>**Magistrate Judge:** Hon. Kendall J. Newman<br><br>**Trial Date:** Not Set<br>**Complaint Filed**: March 12, 2015 |

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME, LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME, LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................. 3

    A.      The Hacking ........................................................................................... 3

    B.      Commencement of the Main Action ...................................................... 3

    C.      Respublika's Apparent Compliance with the TRO ................................ 4

    D.      The District Court Authorizes Expedited Discovery, Including a Subpoena to Facebook ....................................................................................... 4

    E.      Respublika's Compliance is Short-Lived .............................................. 5

    F.      Ketebaev, Respublika, and Ablyazov ................................................... 6

    G.      The District Court Authorizes Discovery From Respublika ................. 8

    H.      The District Court Authorizes Discovery From Ketebaev ................... 9

    I.      The November 12 Subpoena .................................................................. 10

    J.      The Joint Statement ............................................................................... 11

III.    ARGUMENT ...................................................................................................... 11

    A.      The Discovery Sought by the November 12 Subpoena Is Relevant To Plaintiff's Claims in the Main Action, and Proportional to the Needs of the Case. .................................................................................................. 11

    B.      Ordering the Discovery Sought by the Subpoena Would Not Infringe the Reporters' Privilege or Violate the First Amendment Because the Subpoena Does Not Seek Journalistic Information. ............................... 14

    C.      Ordering the Discovery Sought by the Subpoena  Would Not Violate Any Right to Internet Anonymity Because Neither Ketebaev Have Anonymously Posted Stolen Materials. ................................................ 15

    D.      Respublika's Claims of Harassment and Intimidation Were Raised in the District Court and Did Not Dissuade it from Ordering Discovery. ....... 17

    E.      The 100-Mile Rule is Satisfied Because Sacramento Is Within 100 Miles of Facebook Headquarters in Menlo Park. ............................................. 17

IV.     CONCLUSION .................................................................................................. 18

i

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

*American Federation of Musicians of the United States and Canada, Plaintiff, v. Skodam Films, LLC, Defendant,*
    No. 3:15-MC-122-M-BN, 2015 WL 7771078 (N.D. Tex. Dec. 3, 2015)................................ 11

4

5

*Chevron Corp. v. Donziger,*
    No. 12-mc-80237 CRB (NC), 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) ........... 14, 16, 17

6

*Drummond Co. Inc. v. Collingsworth,*
    No. 13-mc-80169 JST (JSC), 2013 WL 6074157 (N.D. Cal. Nov. 18, 2013) ....................... 15

7

*Hill v. Equitable Bank, National Association,*
    115 F.R.D. 184 (D. Del. 1987).............................................................................................. 18

8

9

*In re Application of Chevron Corp.,*
    736 F. Supp. 2d 773 (S.D.N.Y. 2010) .................................................................................. 14

10

*Klyce v. Does,*
    No. 11 CV 02248 WHA, 2011 U.S. Dist. LEXIS 88908 (N.D. Cal. Aug. 10, 2011)............... 2

11

12

*Obodai v. Indeed, Inc.,*
    No. 13-mc-80027 EMC (KAW), 2013 WL 1191267 (N.D. Cal. Mar. 21, 2013) .................. 15

13

*Sams v. Yahoo!, Inc.,*
    No. CV-10-5897-JF (HRL), 2011 WL 1884633 (N.D. Cal. May 18, 2011) .......................... 15

14

15

*Schwartz v. Marriott Hotel Services, Inc.,*
    186 F. Supp. 2d 245 (E.D.N.Y. 2002) .................................................................................. 18

16

*SCM Corp., v. Xerox Corp.,*
    76 F.R.D. 214 (D. Conn. 1977)............................................................................................. 18

17

18

*Wright v. F.B.I.,*
    241 Fed. Appx. 367 (9th Cir. June 29, 2007)........................................................................ 14

19

<u>Statutes</u>

20

18 U.S.C. § 1030 ............................................................................................................................ 1

21

18 U.S.C. §§ 2701, *et seq.*............................................................................................................ 15

22

<u>Rules</u>

23

Fed. R. Civ. P. 26 ................................................................................................................... 11, 12

24

Fed. R. Civ. P. 45 ............................................................................................................. 11, 17, 18

25

26

27

28

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME, LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

ii

## I.   __INTRODUCTION__

Plaintiff the Republic of Kazakhstan respectfully submits this Memorandum of Points and Authorities in support of its motion to compel non-party Facebook, Inc. ("Facebook") to comply with a subpoena duces tecum dated November 12, 2015 (the "November 12 Subpoena" or the "Subpoena").  The date of compliance with the subpoena passed without production, and unfortunately, despite extensive meet and confer efforts, Facebook refuses to produce the requested documents absent a court order.  The U.S. District Court for the Eastern District of California is the proper venue to hear this motion as the subpoena at issue is returnable in Sacramento.

The underlying case is pending in the U.S. District Court for the Southern District of New York (the "District Court").  The case arises out of the illegal hacking, by persons as yet unidentified, of the computer system of The Republic of Kazakhstan and the email accounts of Kazakh government officials.  The hackers stole thousands of sensitive, proprietary, confidential, and attorney-client privileged government documents (the "Stolen Materials") in violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030).  On March 12, 2015, Plaintiff started a "Doe" action in the District Court against the unknown hackers (the "Main Action").  *The Republic of Kazakhstan v. Does 1-100 Inclusive*, No. 15 Civ. 1900 (S.D.N.Y. 2015) (Request for Jud. Not., Ex. 1.)[1]  The District Court authorized expedited discovery, and, in that regard, has specifically authorized Plaintiff to serve a subpoena on Facebook.

Two Facebook account-holders – Respublika (an entity) and Muratbek Ketebaev (an individual) – have been especially active in posting screenshots of Stolen Materials on their respective Facebook pages.  Accordingly, Respublika and Ketebaev are under scrutiny to determine their role in the hacking, their connection to the hackers, and how they came to be in possession of Stolen Materials.  The District Court has authorized the depositions of Respublika

---

[1] Citations in the form "Req. for Jud. Not., Ex. __" refer to the exhibits attached to Plaintiff's Request for Judicial Notice, dated December 15, 2015.  Citations in the form "Semmelman Decl., ¶ __" refer to the Declaration of Jacques Semmelman, counsel for Plaintiff in the Main Action, dated December 14, 2015.  Citations in the form "Semmelman Decl., Ex. __" refer to the exhibits attached to the Declaration of Jacques Semmelman, counsel for Plaintiff in the Main Action, dated December 14, 2015

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME, LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

and of Ketebaev with respect to these and other issues.  The depositions have not yet taken place.

The November 12 Subpoena seeks Facebook account information about the administrators of the Respublika and Ketebaev Facebook pages; account information about the person(s) who posted certain Stolen Materials on these Facebook pages; and account information about the person(s) who removed two specific posts containing Stolen Materials from the Respublika Facebook page.  The District Court has authorized discovery with respect to, inter alia, the Respublika and Ketebaev Facebook pages, accounts, and postings; and the involvement of Respublika and Ketebaev in the hacking, their connection with the hackers, and how they obtained Stolen Materials.  Additionally, Plaintiff has obtained from Internet Service Providers the IP addresses of computers that were used, without authorization, to access various hacked accounts during the relevant time periods.  (Semmelman Decl., ¶ 3.)  A match between any of those IP addresses and an IP address produced in response to the Subpoena would constitute forensic evidence that the computer with that IP address was used in the hacking.[2]  The information sought in the Subpoena falls squarely within the scope of authorized discovery.

The Subpoena is narrowly tailored.  It (as well as predecessor subpoenas it replaces) has been the subject of extensive meet and confer efforts over the past nine months.  It seeks "documents sufficient to show" certain Facebook account information.  It is not burdensome.  It is proportional to the needs of the case.  Though modest in scope, it seeks essential information about two active posters of Stolen Materials on Facebook, to help determine their involvement in the hackings – the central issue in the Main Action.

As shown below, the Subpoena does not implicate any journalistic privilege, infringe any First Amendment principles, or impair any right to internet anonymity.  Nor is it a tool of harassment or persecution – an argument Respublika has vigorously and repeatedly asserted in the District Court, but which has not succeeded in preventing the grant of discovery there.

---

[2] Each computer and other internet-linked device has an IP address.  The IP address provides a form of digital fingerprint, left when the computer is used to access someone's account, as happened here.  *See Klyce v. Does*, No. 11 CV 02248 WHA, 2011 U.S. Dist. LEXIS 88908, at *2 (N.D. Cal. Aug. 10, 2011) ("when a person logs into an account, his or her IP address, a unique identifier, is captured by the ISP [Internet Service Provider].").

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME, LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

The Court should grant Plaintiff's Motion to Compel, and should direct Facebook to produce the information requested in the Subpoena.

## II.    STATEMENT OF FACTS

**A.    The Hacking**

In January 2015, Plaintiff discovered unidentified hackers had broken into its computer system, and into email accounts used by Kazakh government officials to conduct government business, and had stolen thousands of emails and other documents (the "Stolen Materials"). (Req. for Jud. Not., Ex. 2, ¶¶ 7-8.)  The Stolen Materials included attorney-client privileged communications between Plaintiff and its outside counsel – including U.S. counsel – as well as documents containing sensitive matters of state.  (Req. for Jud. Not., Ex. 2, ¶ 10.)

The most active posters of Stolen Materials online are Respublika, an entity that describes itself as a news organization, and Muratbek Ketebaev.  Respublika actively posts Stolen Materials principally on two websites:  its own website, www.respublika-kz.info (the "Respublika Website"), and its Facebook page, http://www.facebook.com/respublika.kaz.info (the "Respublika Facebook Page").  (Req. for Jud. Not., Ex. 3, ¶ 4.)

Ketebaev is the husband of Iryna Petrushova, Respublika's Editor and founder (Req. for Jud. Not., Ex. 4, at p. 19), and is listed with the U.S.-based web host of the Respublika Facebook Page as one of the "Primary Contact[s]" for the Respublika Website.  (Req. for Jud. Not., Ex. 5.) Ketebaev actively posts Stolen Materials on his own Facebook page, https://www.facebook.com/mur.ketebayev (the "Ketebaev Facebook Page").  (Req. for Jud. Not., Ex. 3, ¶ 4.)

**B.    Commencement of the Main Action**

On March 12, 2015, Plaintiff commenced the Main Action in the District Court against "Doe" defendants (i.e., unknown persons who perpetrated the hackings), alleging violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA").  The Main Action was initially precipitated principally by two posts (the "Two Posts") on the Respublika Facebook Page that contained screenshots of Stolen Materials, including privileged attorney-client communications between Plaintiff and its outside counsel, the New York law firm Curtis,

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME, LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

3

Mallet-Prevost, Colt & Mosle LLP.  (Req. for Jud. Not., Ex. 6.)

On March 13, 2015, the District Court (Hon. Edgardo Ramos, U.S. District Judge) issued a Temporary Restraining Order (the "TRO"), finding good cause to believe that the Doe defendants had illegally hacked into Plaintiff's computers in violation of the CFAA, and that their dissemination of the Stolen Materials had caused and will continue to cause irreparable harm to Plaintiff, and should be enjoined.  (Req. for Jud. Not., Ex. 7.)  By its terms, and consistent with Fed. R. Civ. P. 65, the TRO applied to the hackers as well as those acting in concert with or participating with the hackers, and enjoined the "Defendants, their affiliates, employees, agents, and representatives, and all persons acting in concert with or participating with Defendants," from "using, disclosing, disseminating, posting, displaying, sharing, distributing, hosting, copying, viewing, accessing, providing access to or making available to anyone, in any manner whatsoever," the Stolen Materials.  (*Id.* at p. 2.)

**C.      Respublika's Apparent Compliance with the TRO**

The District Court directed Plaintiff to serve the Complaint and the TRO, inter alia, by posting a notice and link on the Respublika Facebook Page.  (*Id.* at pp. 3-4.)  Within days after Plaintiff's counsel had posted this notice (Req. for Jud. Not., Ex. 8), the Two Posts were removed from the Respublika Facebook Page.  (Req. for Jud. Not., Ex. 9, at p. 3; Req. for Jud. Not., Ex. 10, ¶ 6.)  Plaintiff's counsel subsequently confirmed with Facebook only the administrator of the Respublika Facebook Page could have removed those posts.  (Req. for Jud. Not., Ex. 10, ¶ 6.)

From Plaintiff's perspective, the removal of the Two Posts in direct response to the posting of the notice of the TRO confirmed (a) that someone at Respublika had read the TRO, and (b) that Respublika considered itself bound by the TRO (either because it had participated in the hacking or because it was acting in concert or participation with the hackers).

**D.      The District Court Authorizes Expedited Discovery, Including a Subpoena to Facebook**

On March 20, 2015, the District Court conducted a preliminary injunction hearing and converted the TRO into a Preliminary Injunction, the material terms of which were identical to

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME, LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

4

those of the TRO.  (Req. for Jud. Not., Ex. 11.)  The District Court found good cause to believe

there was hacking in violation of the CFAA:

> There is good cause to believe that on or before January 21, 2015, Defendants obtained unauthorized access to:  (a) the computers of the Republic of Kazakhstan, and (b) Gmail accounts used from time to time by officials of the Republic of Kazakhstan to conduct official government business (collectively the "Hacked Computers"), and misappropriated thousands of government emails and other documents containing sensitive, proprietary, confidential, and attorney-client privileged government documents belonging to the Republic of Kazakhstan (the "Stolen Materials")."

(*Id.* at ¶ 3.)  During the March 20 preliminary injunction hearing, Plaintiff moved for

authorization to take expedited discovery aimed at identifying the hackers and their confederates,

including posters of Stolen Materials.  In particular, Plaintiff's counsel proposed to serve a

subpoena on Facebook, as well as on various other websites:

> The Court:  Who do you propose to serve discovery on?
>
> Mr. Semmelman [counsel for Plaintiff]:  The first obvious target is to ask Facebook to identify who took these posts down. … But of course, we want to dig behind all the various Websites that are located in different parts of the world to find out who posted on these Websites and to use the discovery process to go as far as we can to try to identify who the posters are or who is behind the Websites, things of that nature, and that's going to involve discovery against various third parties. . . .  We're going to try to identify the IP addresses of the posters . . ."

(Req. for Jud. Not., Ex. 9, at p. 8.)  The District Court authorized the requested discovery:

> Certainly given the findings that I've already made concerning the fact that Kazakhstan has met the standard for preliminary injunction, it seems per force, therefore, to have met the standards . . . for expedited discovery.  So you are granted leave to serve that discovery.

(*Id.* at pp. 8-9.)

**E.    Respublika's Compliance is Short-Lived**

Respublika's apparent compliance with the orders of the District Court was short-lived.

Shortly after someone had taken down the Two Posts, Respublika resumed posting Stolen

Materials on its Facebook page.  (Req. for Jud. Not., Ex. 10, ¶ 9.)

On April 6, 2015, Plaintiff provided Facebook with a copy of the Preliminary Injunction

and asked that Facebook "abide by" it.  (Req. for Jud. Not., Ex. 12, ¶ 13.)  Shortly thereafter,

5

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME, LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

Facebook removed several posts from the Respublika Facebook Page that contained Stolen Materials, and stated it was doing so based on Facebook's "policies." (*Id.*) Over approximately the next two months, the following process was repeated multiple times: Stolen Materials would be posted on the Respublika Facebook Page or on the Ketebaev Facebook Page, Plaintiff would notify Facebook, and Facebook would typically take down the posts. (Req. for Jud. Not., Ex. 10, ¶ 10.) At no time during this period did Respublika (or Ketebaev) notify Plaintiff's counsel that it did not consider itself bound by the Preliminary Injunction. (*Id.*)

In addition to posting Stolen Materials on its Facebook page, Respublika was also posting Stolen Materials on the Respublika Website. (Req. for Jud. Not., Ex. 10, ¶ 11.) The Respublika Website is hosted by IRC Company, Inc. d/b/a Black Lotus Communications ("Black Lotus"), a U.S.-based web host. (*Id.* at ¶ 11.) On April 23, 2015, Plaintiff served Black Lotus with a copy of the Preliminary Injunction and asked that Black Lotus "abide by" it. (Req. for Jud. Not., Ex. 12, ¶ 14.) Black Lotus represented that it lacked the technical capacity to take down individual posts (only the entire website), but that it would notify Respublika to take down specific posts that contained Stolen Materials. (Req. for Jud. Not., Ex. 10, ¶ 18.) Thereafter, on multiple occasions over a period of more than five weeks, Plaintiff notified Black Lotus of posts that contained Stolen Materials, which were taken down, apparently by Respublika itself. (*Id.* at ¶ 19.) In total, Respublika itself took down 47 posts. (*Id.*)

**F.    Ketebaev, Respublika, and Ablyazov**

According to records maintained by Black Lotus, Ketebaev is a "primary contact" for Respublika. (Req. for Jud. Not., Ex. 5.) Ketebaev is married to the Editor and founder of Respublika. (Req. for Jud. Not., Ex. 4, at p. 19.)

Respublika and Ketebaev have been actively using Stolen Materials to promote the cause of one Mukhtar Ablyazov. Ablyazov is a prime suspect in, as well as a major beneficiary of, the hacking. Ablyazov is the *already-proven* mastermind of a multi-billion dollar theft from BTA Bank, a major bank in Kazakhstan, which has additional operations in Russia and the Ukraine. The High Court of Justice of the United Kingdom (the "High Court of Justice") has (to date) entered money judgments in favor of BTA Bank and against Ablyazov in excess of $4.6 billion.

6

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME, LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

1   (Req. for Jud. Not., Ex. 13, ¶ 7.)

2       In 2012, in litigation brought by BTA Bank, the High Court of Justice sentenced

3   Ablyazov to 22 months in prison for contempt of court.  (Req. for Jud. Not., Ex. 14, at pp. 3-4.)

4   To avoid serving the sentence, Ablyazov fled the United Kingdom, and went into hiding.  (Req.

5   for Jud. Not., Ex. 13, ¶ 24.)  On July 31, 2013, he was arrested in the south of France, and has

6   since been incarcerated in France.  (Req. for Jud. Not., Ex. 13, ¶¶ 38, 40; Req. for Jud. Not., Ex.

7   15, at p. 9.)  His extradition from France has been requested by both Russia and the Ukraine.

8   The French courts have ruled that Ablyazov is extraditable.  (Req. for Jud. Not., Ex. 16; Req. for

9   Jud. Not., Ex. 17.)  The extradition has not occurred as of yet.

10      Respublika and Ketebaev have been using Stolen Materials as part of an ongoing

11   propaganda campaign that portrays Ablyazov and his accomplices as innocent victims of a

12   frame-up supposedly orchestrated by the Republic of Kazakhstan with the collusion of the

13   governments and courts of the United Kingdom, France, Spain, Poland, Russia, and the Ukraine.

14   (Req. for Jud. Not., Ex. 6; Req. for Jud. Not., Ex. 18, ¶¶ 6-8.)

15      Ketebaev is outspoken in his support for Ablyazov; in his claim that Ablyazov is

16   innocent; and in his view that Ablyazov needs an effective public relations campaign to defuse

17   the perception he is a thief.  (Req. for Jud. Not., Ex. 19, at p. 3.)  Such a public relations

18   campaign is being waged by Respublika – *using Stolen Materials*.  Respublika has specifically

19   referenced Stolen Materials to assert that "Ablyazov didn't steal from the bank" and to condemn

20   the "key and extremely negative role [that] was played by government agencies of France[.]"

21   (Req. for Jud. Not., Ex. 20; Req. for Jud. Not., Ex. 18, ¶ 8.)

22      With respect to a Spanish case against Ablyazov's accomplice Alexandr Pavlov,

23   Respublika has written that "Spanish judges are working for Kazakhstan," and that information

24   supplied to Spain by "British and Polish judicial authorities were generated under the influence

25   of lobbyists of the Kazakh authorities."  (Req. for Jud. Not., Ex. 6; Req. for Jud. Not., Ex. 18, at

26   ¶ 6.)  Reports in the press that Ablyazov is a financial backer of Respublika (Req. for Jud. Not.,

27   Ex. 10, ¶ 23; Req. for Jud. Not., Ex. 21), help explain why Respublika has provided unstinting

28   support for Ablyazov and his confederates.

**G.     The District Court Authorizes Discovery From Respublika**

On June 19, 2015, counsel for Plaintiff was contacted by counsel for Respublika and informed for the first time that it was Respublika's position that it was not bound by the Preliminary Injunction.  (Req. for Jud. Not., Ex. 10, at ¶ 22.)  Counsel for Respublika stated that Respublika was "contemplating a motion to intervene and seek relief from the Preliminary Injunction[.]" ) (Semmelman Decl., Ex. A.)

On August 4, 2015, Respublika intervened in the Main Action by filing a motion for an order clarifying that the Preliminary Injunction did not apply to it (the "Motion for Clarification").  (Req. for Jud. Not., Ex. 22.)  On August 25, 2015, Plaintiff filed its opposition to the Motion for Clarification, and cross-moved for expedited discovery to ascertain, inter alia, Respublika's role in the hacking, its connection to the hackers, and how it obtained the Stolen Materials.  (Req. for Jud. Not., Ex. 23.)  These issues are relevant to the pivotal issue raised by the Motion for Clarification, namely whether Respublika was a hacker (or was complicit in the hacking), and is therefore bound by the Preliminary Injunction.  (Req. for Jud. Not., Ex. 24, at p. 3.)  Judge Ramos took the Motion for Clarification sub judice, and referred the cross-motion for expedited discovery to the Hon. Henry Pitman, U.S. Magistrate Judge.

By Order dated October 27, 2015, Judge Ramos, based "[o]n the record presently before the Court," granted the Motion for Clarification.  (*Id.* at p. 3.)   Judge Ramos stated that "the foregoing is without prejudice to plaintiff to reapply for the imposition of an injunction against the use of Stolen Materials by Respublika should it obtain sufficient evidence to support such an order."  (*Id.* at pp. 5-6.)

In the meantime, Respublika opposed Plaintiff's cross-motion for expedited discovery, arguing there was insufficient evidence of its involvement in the hacking to warrant any discovery, and also alleging that the cross-motion was part of some kind of campaign of harassment and persecution by Plaintiff, including bizarre, unproven, and disputed allegations involving such things as animal carcasses and firebombings.  (Req. for Jud. Not., Ex. 25, at pp. 43-45.)  Respublika also argued that discovery should be denied because of supposed First Amendment issues and the reporters' privilege.   (Req. for Jud. Not., Ex. 26, at p. 5.)

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME, LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

Notwithstanding these arguments, Judge Pitman granted Plaintiff's cross-motion for expedited discovery from Respublika, in the form of a Rule 30(b)(6) deposition on five specific topics:

1.  "Respublika's and LLC Media-Consult's knowledge of and relationship to the Hackers." [3]

2.  "Respublika's and LLC Media-Consult's knowledge of and relationship to the Hackings."

3.  "The circumstances under which Respublika and LLC Media-Consult came to be in possession of the Stolen Materials."

7.  "Respublika's and LLC Media-Consult's contacts with and relationship with Mukhtar Ablyazov, including any financial relationship at any time."

8.  "Respublika's and LLC Media-Consult's contacts with and relationship with Muratbek Ketebaev." [4]

(Req. for Jud. Not., Ex. 28, ¶ 2; Req. for Jud. Not., Ex. 29.)

## H.   The District Court Authorizes Discovery From Ketebaev

Plaintiff also sought to take the deposition of Ketebaev, who resides in Poland. Accordingly, Plaintiff filed a motion in the District Court for the issuance of a Letter of Request under the Hague Convention to the Central Authority of the Republic of Poland for assistance in obtaining Ketebaev's deposition testimony.  (Req. for Jud. Not., Ex. 30.)  On October 28, 2015, Judge Ramos granted Plaintiff's motion.  (Req. for Jud. Not., Ex. 31.)  That same day, Judge Ramos signed the Letter of Request.  (Req. for Jud. Not., Ex. 32.)   Ketebaev's deposition has not yet taken place.

Among the 17 topics about which the District Court expressly authorized Plaintiff to examine Ketebaev are the following:

1.  "How Mr. Ketebaev obtained any of the Stolen Materials."

2.  "Any information concerning how the Stolen Materials were published on the internet at various times, and by whom."

5.  "Mr. Ketebaev's role at, and involvement with, the website https://www.respublika-kz.info (the 'Respublika Website'), and the identities of others involved in the creation, operation, control, or funding

---

[3] LLC Media-Consult is the corporation that owns Respublika.  (Req. for Jud. Not., Ex. 27.)
[4] Topics 4, 5, and 6 were withdrawn by Plaintiff.  (Req. for Jud. Not., Ex. 28, ¶ 2.)

9

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME, LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

of the Respublika Website."

8. "Mr. Ketebaev's role at, and involvement with, the Facebook page https://www.facebook.com/respublika.kaz.info (the 'Respublika Facebook Page'), and the identity of everyone involved in the creation, operation, or control of the Respublika Facebook Page, including the identity of the administrators of the Respublika Facebook Page."

9. "Mr. Ketebaev's role at, and involvement with, the Facebook page https://www.facebook.com/mur.ketevbayev (the 'Ketebaev Facebook Page'), and the identity of everyone involved in the creation, operation, or control of the Ketebaev Facebook Page, including the identity of the administrators of the Ketebaev Facebook Page."

13. "Mr. Ketebaev's knowledge of who posted Stolen Materials on the Respublika Facebook page."

14. "Mr. Ketebaev's knowledge of who posted Stolen Materials on the Ketebaev Facebook page."

16. "Mr. Ketebaev's knowledge and awareness of the TRO and the PI."

17. "The identity of the person(s) who took down two Facebook posts containing Stolen Materials from the Respublika Facebook Page around March 17-18, 2015" (i.e., the Two Posts).

(Req. for Jud. Not., Ex. 32.)

## I.   The November 12 Subpoena

Shortly after the above discovery rulings were issued by the District Court, Plaintiff served the November 12 Subpoena, which adheres directly to these discovery rulings.   The requests in the November 12 Subpoena, each of which seek "[d]ocuments sufficient to show" certain account information, request evidence concerning topics about which the District Court has already determined discovery is warranted.   Specifically, the Subpoena requests that Facebook produce the following:

1. "Documents sufficient to show (during the Relevant Period) the following account registration information:   the names, email addresses, IP addresses, and MAC Addresses of the registrants and the administrators of the Facebook accounts for [Ketebaev's and Respublika's] Facebook profiles."

2. "Documents sufficient to show (during the Relevant Period) the following account registration information:   the names, email addresses, IP addresses, and MAC Addresses of the users of the Facebook accounts who

10

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME, LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

removed the [Two Posts]."

3.      "Documents sufficient to show (during the Relevant Period) the following account registration information:   the names, email addresses, IP addresses, and MAC Addresses of the registrants and the administrators of the Facebook accounts that created [26 posts containing Stolen Materials that appeared on the Ketebaev and Respublika Facebook Pages]."

(Semmelman Decl., Ex. B.)

**J.      The Joint Statement**

Pursuant to the Eastern District of California Local Rules, Rule 251, Plaintiff engaged in extensive and substantial meet and confer negotiations concerning the documents sought in the November 12 Subpoena.   These meet and confer efforts, which are the culmination of nine months of negotiations, are more specifically detailed in the Joint Statement to be filed pursuant to Local Rule 251.

## III.      ARGUMENT

**A.      The Discovery Sought by the November 12 Subpoena Is Relevant To Plaintiff's Claims in the Main Action, and Proportional to the Needs of the Case.**

Fed. R. Civ. P. 45 governs discovery from non-parties by subpoena.   The scope of discovery that can be requested through a subpoena under Rule 45 is the same as the scope under Fed. R. Civ. P. 26(b)(1).   *See American Federation of Musicians of the United States and Canada, Plaintiff, v. Skodam Films, LLC, Defendant*, No. 3:15-MC-122-M-BN, 2015 WL 7771078, at *5 (N.D. Tex. Dec. 3, 2015) (incorporating the 2015 amendment to Rule 26 into the Rule 45 relevance standard).

Fed. R. Civ. P. 26(b)(1) provides:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME, LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

11

The discovery sought conforms to Fed. R. Civ. P. 26(b)(1).  Each of the requests in the Subpoena is narrowly tailored to seek documents directly relevant to topics that Judge Ramos and Judge Pitman have ruled are relevant to the Main Action.

*Request No. 1*

Request No. 1 of the Subpoena calls for narrowly-focused account information of the registrants and administrators of Ketebaev's and Respublika's Facebook accounts.  (Semmelman Decl., Ex. B, at p. 6, ¶ 1.)  Judge Ramos authorized discovery concerning "the identity of everyone involved in the creation, operation, or control of the Respublika Facebook Page, including the identity of the administrators of the Respublika Facebook Page," and "the identity of everyone involved in the creation, operation, or control of the Ketebaev Facebook Page, including the identity of the administrators of the Ketebaev Facebook Page."  (Req. for Jud. Not., Ex. 32, p. 6, Nos. 8, 9.)  Judge Ramos also authorized discovery concerning "who posted Stolen Materials on the Respublika Facebook page," and "who posted Stolen Materials on the Ketebaev Facebook page."  (*Id*. at pp. 6-7, Nos. 13, 14.)  Likewise, Judge Pitman authorized discovery regarding "[t]he circumstances under which Respublika and LLC Media-Consult came to be in possession of the Stolen Materials."  (Req. for Jud. Not., Ex. 28, ¶ 2; Req. for Jud. Not., Ex. 29, Topic No. 3.)

Subpoena Request No. 1 therefore furthers the goal of the above-authorized discovery:  to gain an understanding of the creation, operation, and control of the Respublika and Ketebaev Facebook pages, as well as who posted Stolen Materials on those pages, with a view to determining whether Respublika and Ketebaev were participants in the hacking or were complicit with the hackers.[5]

*Request No. 2*

Request No. 2 of the Subpoena calls for narrowly-focused account information of the users of the Facebook accounts who removed the Two Posts a few days after notice of the TRO was posted on the Respublika Facebook Page.  (Semmelman Decl., Ex. B, at p. 6, ¶ 2.)  Judge

---

[5] For the assistance of the Court, attached as an Addendum to this Memorandum is a chart that compares the requests in the Subpoena with the discovery ordered by the District Court.

LAW OFFICES OF
MATHENY SEARS LINKERT & JAIME, LLP
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

Ramos specifically authorized discovery concerning "Mr. Ketebaev's knowledge and awareness of the TRO and the PI [Preliminary Injunction]," and "[t]he identity of the person(s) who took down two Facebook posts containing Stolen Materials from the Respublika Facebook page around March 17-18, 2015."  (Req. for Jud. Not., Ex. 32, at p. 7, Nos. 16, 17.)

Subpoena Request No. 2 therefore furthers the goal of the above-authorized discovery:  to gain an understanding of who was aware of the TRO and who reacted to it by taking down the Two Posts.

*Request No. 3*

Request No. 3 of the Subpoena calls for narrowly-focused account information of the registrants and administrators of the Facebook accounts that created 26 posts containing Stolen Materials that were posted on the Respublika and Ketebaev Facebook pages.  (Semmelman Decl., Ex. B, at p. 6, ¶ 3.)

As noted, Judge Ramos authorized discovery concerning "who posted Stolen Materials on the Respublika Facebook page," and "who posted Stolen Materials on the Ketebaev Facebook page."  (Req. for Jud. Not., Ex. 32, at pp. 6-7, Nos. 13, 14.)  More broadly, Judge Ramos authorized discovery regarding "how the Stolen Materials were published on the internet at various times, and by whom."  (*Id.* at p. 5, No. 2.)  Similarly, Judge Pitman authorized discovery concerning "[t]he circumstances under which Respublika and LLC Media-Consult came to be in possession of the Stolen Materials." (Req. for Jud. Not., Ex. 28, ¶ 2; Req. for Jud. Not., Ex. 29, Topic No. 3.)

Subpoena Request No. 3 therefore furthers the goal of the above-authorized discovery:  to identify who posted Stolen Materials on the Respublika and Ketebaev Facebook pages.

While the information sought in the Subpoena is likely to be valuable in its own right, it could be particularly useful in connection with the court-ordered depositions of Respublika and Ketebaev.

Finally, Plaintiff has obtained from Internet Service Providers the IP addresses of computers used at relevant times to obtain unauthorized access to certain of the hacked accounts. (Semmelman Decl., ¶ 3.)  A match between any of those IP addresses and an IP address

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME, LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

13

1  responsive to the Subpoena would constitute forensic evidence that ties the hacking to the

2  computer with that IP address.

3  **B.     Ordering the Discovery Sought by the Subpoena Would Not Infringe the Reporter's**

4  **Privilege or Violate the First Amendment Because the Subpoena Does Not Seek**

5  **Journalistic Information.**

6  Respublika has stated in meet and confer sessions that it intends to argue that the

7  information sought by the Subpoena is protected by the reporter's privilege. The reporter's

8  privilege is a qualified evidentiary privilege that applies to information acquired by a journalist

9  in the course of gathering the news. *See Wright v. F.B.I.*, 241 Fed. Appx. 367, 368 (9th Cir. June

10 29, 2007). It is not a blanket privilege that shrouds all information about a reporter in secrecy.

11 *In re Application of Chevron Corp.*, 736 F. Supp. 2d 773, 781 (S.D.N.Y. 2010) ("The word

12 'journalist,' in other words, is not an incantation that protects against the issuance of a subpoena,

13 although a properly supported claim of privilege may well protect against the imposition of, or

14 limit, any duty to comply with it.").

15 The Subpoena does not seek information of a type that might be covered by the reporter's

16 privilege. It does not seek reporter's notes, drafts, or communications. It does not seek to

17 intrude into the editorial process. It does not seek journalistic *content* of any kind. Nor does it

18 seek the identity of confidential sources.

19 What the Subpoena seeks is account information for, and IP addresses of computers used

20 by, the registrants and administrators of, as well as the posters of Stolen Materials on, the

21 Respublika and Ketebaev Facebook pages. That inquiry violates neither the First Amendment

22 nor any reporter's privilege.

23 In *Chevron Corp. v. Donziger,* No. 12-mc-80237 CRB (NC), 2013 WL 4536808 (N.D.

24 Cal. Aug. 22, 2013, a party served subpoenas on Google and Yahoo!, seeking account

25 information pertaining to, and IP addresses used by, various non-party account-holders. The

26 account-holders moved to quash the subpoenas, arguing that the First Amendment shielded the

27 requested information from disclosure. The court disagreed, and denied the motion to quash,

28 reasoning that the "subpoenas do not seek the *content* of any electronic communication. They

14

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME, LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME, LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

1  seek the identifying information of the email address owner, as well as information about which

2  computers logged into the email addresses from which internet connections. *The Doe movants*

3  *cite no case that analogizes IP addresses and logs or email addresses to protected speech.*" *Id.*

4  at *6 (emphasis added). *See also Obodai v. Indeed, Inc.,* No. 13-mc-80027 EMC (KAW), 2013

5  WL 1191267, at *3 (N.D. Cal. Mar. 21, 2013) (ordering production of IP addresses that accessed

6  gmail account, with dates and time of access, and holding that this information was not "content"

7  protected under the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.* ("SCA")); *Sams v.*

8  *Yahoo!, Inc.,* No. CV-10-5897-JF (HRL), 2011 WL 1884633, at *7 (N.D. Cal. May 18, 2011)

9  (disclosure by Yahoo! of subscriber information and IP address held not actionable because that

10  information was not "content" under the SCA), *aff'd*, 713 F.3d 1175 (9th Cir. 2013).[6]

11    The Subpoena seeks no content, and therefore does not implicate the reporter's privilege

12  or the First Amendment.

13  **C.    Ordering the Discovery Sought by the Subpoena Would Not Violate Any Right to**

14    **Internet Anonymity Because Neither Ketebaev Nor Respublika Have Anonymously**

15    **Posted Stolen Materials.**

16    Ketebaev and Respublika cannot assert any purported right to internet anonymity in

17  connection with their Facebook accounts. Facebook's written policy expressly states that there is

18  no anonymity on Facebook:

19    **What names are allowed on Facebook?**

20    • "Facebook is a community where people use their authentic identities. We

21      require people to provide the name they use in real life; that way, you

22      always know who you're connecting with. This helps keep our community

      safe."

23    • "The name you use should be your authentic identity; as your friends call

24      you in real life and as our acceptable identification forms would show."

25  _____
[6] In *Drummond Co. Inc. v. Collingsworth*, No. 13-mc-80169 JST (JSC), 2013 WL 6074157 (N.D. Cal.

26  Nov. 18, 2013, the court granted a defendant's motion to quash the sub-part of a subpoena seeking the disclosure of an IP address *and associated IP log data*, reasoning that such disclosure could infringe the defendant's First Amendment right to freely associate by revealing the identities of persons and

27  associations with whom she had corresponded. Here, in contrast, the November 12 Subpoena does not seek any IP log data, merely the IP addresses and certain other account information. This information

28  would not reveal the identities of persons and entities with whom Respublika and Ketebaev corresponded.

15

1   •   "Pretending to be anything or anyone isn't allowed."

2   (Semmelman Decl., Ex. C.)

3   Neither Ketebaev nor Respublika have acted anonymously with respect to their posting of

4   Stolen Materials.  Ketebaev has openly posted Stolen Materials on a Facebook page bearing his

5   name, as has Respublika on a Facebook page bearing its name.   Ketebaev's wife Iryna

6   Petrushova, Respublika's Editor and founder, does not hide her identity or her relationship with

7   Respublika.  (Req. for Jud. Not., Ex. 4, at p. 19.)  Under such circumstances, neither Ketebaev

8   nor Respublika can establish that their actions in posting Stolen Materials were anonymous.  *See*

9   *Chevron, supra,* 2013 WL 4536808, at *8 (subpoena that sought account information and IP

10   addresses of subscribers to Google and Yahoo! accounts did not implicate account-holders' right

11   to anonymity where account-holders had used their real names on line).

12   Nor do Ketebaev or Respublika have any privacy interest in the account information

13   (including IP addresses), sought by the November 12 Subpoena.  Facebook's Data Policy states

14   that it collects "Device Information" given to it by a subscriber, including "information from or

15   about the computers, phones, or other devices where you install or access our Services,

16   depending on the permissions you've granted."  (Semmelman Decl., Ex. D.)  Such information

17   includes:

18   •   "Attributes such as the operating system, hardware version, device
19       settings, file and software names and types, battery and signal strength,
        and device identifiers."

20   •   "Device locations, including specific geographic locations, such as
21       through GPS, Bluetooth, or WiFi signals."

22   •   "Connection information such as the name of your mobile operator or ISP,
23       browser type, language and time zone, mobile phone number and IP
        address."

24   (Semmelman Decl., Ex. D.)

25   Facebook's Data Policy also advises Facebook subscribers:  "We may access, preserve

26   and share your information in response to a legal request (like a search warrant, court order or

27   subpoena) if we have a good faith belief that the law requires us to do so."  (*Id.* at 2.)  As the

28

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME, LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

16

Northern District of California court held in connection with a subpoena served on Google and Yahoo! seeking account information and IP addresses of certain of their subscribers:

> As a condition of using Google and Yahoo!'s email service, the Doe movants voluntarily provided their names, addresses, and other identifying information. *This voluntary production to a third party eviscerates any subjective expectation of privacy the Doe movants might harbor.* In addition, the IP address and IP logs associated with their email accounts are the addresses visible to the outside world associated with their accounts. The IP address is the routing information that the Doe movants provide to the ISPs when they choose to connect a computer to their email account, send or receive an email, or even visit a website. *There is no reasonable expectation of privacy in the routing and identifying information given to the ISPs to connect to and relay messages on the internet.*

*Chevron*, *supra*, 2013 WL 4536808, at *10 (emphasis added).

In sum, ordering the discovery sought in the Subpoena would not violate any right to internet anonymity.

**D.     Republika's Claims of Harassment and Intimidation Were Raised in the District Court and Did Not Dissuade it from Ordering Discovery.**

Republika can be expected to argue that the Subpoena is part of a campaign of harassment and intimidation. In the District Court, Republika raised this argument vigorously before both Judge Ramos and Judge Pitman, without success. Republika described a purported campaign "to pressure Republika and its journalists – 'in criminal charges, in the court-ordered seizure of the paper, in the delivery of a funeral wreath and a decapitated dog (and later, its head), and in several firebombs.'" (Req. for Jud. Not., Ex. 33, at p. 2.) These bizarre accusations did not dissuade either Judge Ramos or Judge Pitman from ordering the discovery described above. Nor should they dissuade this Court from authorizing the discovery sought by the Subpoena.

**E.     The 100-Mile Rule is Satisfied Because Sacramento Is Within 100 Miles of Facebook Headquarters in Menlo Park.**

Fed. R. Civ. P. 45 requires a place of compliance with a deposition subpoena be located within 100 miles of where the deponent regularly transacts business in person. 100 miles is measured by straight line. *See Schwartz v. Marriott Hotel Services, Inc.*, 186 F. Supp. 2d 245,

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME, LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

17

251 (E.D.N.Y. 2002); *Hill v. Equitable Bank, National Association*, 115 F.R.D. 184, 186 (D. Del. 1987); *SCM Corp., v. Xerox Corp.*, 76 F.R.D. 214, 215 (D. Conn. 1977). Here, the production of documents sought by the Subpoena is properly required in Sacramento, which is within 100 miles of Facebook's headquarters in Menlo Park measured by straight line. (Req. for Jud. Not., Ex. 34.) As a result, enforcement of the Subpoena is proper in the Eastern District of California. *See* Fed. R. Civ. P. 45(d)(2)(B)(i).

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff respectfully requests this Court issue an Order compelling Facebook to comply with the Subpoena for production of records served November 12, 2015.

Dated:    December 15, 2015            **MATHENY SEARS LINKERT & JAIME, LLP**

By:  /s/ Matthew C. Jaime
    MATTHEW C. JAIME
    Attorneys for Plaintiff

Dated:    December 15, 2015            **CURTIS, MALLET-PREVOST, COLT
                                        & MOSLE LLP**

By:  /s/ Jacques Semmelman
    JACQUES SEMMELMAN, ESQ.
    Attorneys for Plaintiff
    (*Pro Hac Vice admission pending*)

18

# ADDENDUM

## *Comparison of Requests in Subpoena With Discovery Ordered by District Court*

| | Subpoena Request #1<br><br>Account information of registrants and administrators of Facebook accounts for Ketebaev and Respublika's Facebook Profiles. | Subpoena Request #2<br><br>Account registration information of users of Facebook accounts who removed the Two Posts from the Respublika Facebook page. | Subpoena Request #3<br><br>Account registration information of the registrants and the administrators of the Facebook accounts that created 26 posts containing Stolen Materials. |
|---|:---:|:---:|:---:|
| **Respublika Rule 30 (b)(6) Topic #3** Circumstances under which Respublika "came to be in possession of the Stolen Materials." | **X** | | **X** |
| **Ketebaev Topic #2:** "[H]ow the Stolen Materials were published on the internet at various times, and by whom." | | | **X** |
| **Ketebaev Topic #8:** "[T]he identity of everyone involved in the creation, operation, or control of the Respublika Facebook Page, including the identity of the administrators of the Respublika Facebook Page." | **X** | | |
| **Ketebaev Topic #9:** "[T]he identity of everyone involved in the creation, operation, or control of the Ketebaev Facebook Page, including the identity of the administrators of the Ketebaev Facebook Page." | **X** | | |
| **Ketebaev Topic #13:** Information regarding "who posted Stolen Materials on the Respublika Facebook page." | **X** | | **X** |
| **Ketebaev Topic #14:** Information regarding "who posted Stolen Materials on the Ketebaev Facebook page." | **X** | | **X** |
| **Ketebaev Topic #16:** "Ketebaev's knowledge and awareness of the TRO and PI." | | **X** | |
| **Ketebaev Topic #17:** "The identity of the person(s) who took down two Facebook posts containing Stolen Materials." | | **X** | |

LAW OFFICES OF
**MATHENY SEARS LINKERT & JAIME, LLP**
3638 AMERICAN RIVER DRIVE
SACRAMENTO, CALIFORNIA 95864

19